1  STEVEN W. RITCHESON, SBN 174062
   HENINGER GARRISON DAVIS, LLC
2  9800 D Topanga Canyon Blvd. #347
   Chatsworth, CA 91311
3  Tel: 818.882.1030
   Fax: 818.337.0383
4  Email: swritcheson@hgdlawfirm.com

5  Attorney for Named Plaintiff

6

7              IN THE UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
8

GUSTAVO ALFARO,                    )
9  on behalf of himself and all others  )
   similarly situated,                 )
10                                      )
                                        )
11 Plaintiff,                          )     **Case Number:**
                                        )
12 vs.                                 )     **JURY TRIAL DEMANDED**
                                        )
13 AVID LIFE MEDIA, INC.              )
   a corporation, AVID DATING LIFE, INC )
14 d/b/a ASHLEY MADISON, and          )
   NOEL BIDERMAN,                      )
15                                     )
   Defendants.                         )
16

17              **CLASS ACTION COMPLAINT**

18       NOW COMES the Plaintiff Gustavo Alfaro, on behalf of himself and all others similarly

19 situated, and for his class action complaint states as follows:

20              **NATURE OF THE ACTION**

21       1.       Plaintiff bring this class action as a result of a breach of the security system of

22 Defendant AVID LIFE MEDIA INC. ("ALM"), Defendant AVID DATING LIFE, INC. d/b/a

23 ASHLEY MADISON ("ADL"), and Defendant Noel Biderman (collectively with ALM and

24 ADL, "Defendants") that governs their electronic transactions, resulting in the compromised and

25 breached security of Plaintiff's and class members' personal financial and other information.

26 Upon information and belief such personal information included, but was not limited to, the

27 putative class members' (hereafter "Class Members") names, addresses, credit or debit card

28 number, the card's expiration date, and/or the card's CVV (a three-digit security code), credit

card transactions, users' sexual preferences and fantasies, transaction histories, email addresses, and other personal and financial information provided by Plaintiff and Class Members to Defendants ("Personal Information").

2.     On or about July 15, 2015, and at times prior, Defendants' databases were compromised, with the result that Personal Information of Plaintiff and Class Members' Personal Information was used or is at risk of use in fraudulent transactions around the world, as well as other invidious exposure.   Upon information and belief, Defendants maintain or maintained information, including Personal Information, regarding nearly 37 million subscribers, and Defendants' security failures affected the credit and debit card of millions of customers, including Plaintiff and Class Members.  One of the primary purposes of Defendants' product and services was confidentiality and anonymity.

3.     Upon information and belief, the security breach and theft of Personal Information was caused by Defendants' violations of its obligations to abide by the best practices and industry standards concerning the security of its payment processing systems and the computers associated therewith as set forth, for example, in Payment Card Industry Security Standards Council Data Security Standards ("PCI DSS") and the decisions of the Federal Trade Commission ("FTC") concerning protection of consumer financial information.   Upon information and belief, hackers deliberately targeted Defendants' servers and collected names, usernames, passwords, email addresses, phone numbers, mailing addresses, and credit card numbers and expiration dates, credit card transactions, and other information.  Upon information and belief, Defendants were also warned that the Personal Information would be released:

ORIGINAL COMPLAINT

TIME'S UP!

Avid Life Media has failed to take down Ashley Madison and Established Men.
We have explained the fraud, deceit, and stupidity of ALM and their members.
Now everyone gets to see their data.

Find someone you know in here? Keep in mind the site is a scam with thousands
of fake female profiles. See ashley madison fake profile lawsuit; 90-95% of
actual users are male. Chances are your man signed up on the world's biggest
affair site, but never had one. He just tried to. If that distinction matters.

Find yourself in here? It was ALM that failed you and lied to you. Prosecute
them and claim damages. Then move on with your life. Learn your lesson and make
amends. Embarrassing now, but you'll get over it.

Any data not signed with key 6E50 3F39 BA6A EAAD D81D  ECFF 2437 3CD5 74AB AA38
is fake.

4.      After learning of the security breach, Defendants failed to notify Plaintiff and the putative Classes in a timely manner and failed to take other reasonable steps to inform them of the nature and extent of the breach. As a result, Defendants prevented Plaintiff and the putative Class Members from protecting themselves from the breach and caused Plaintiff and Class Members to suffer financial loss and emotional distress.  Instead of promptly informing its members of the breach, about which Defendants learned on or about July 12, 2015, Defendants did not come forward until about July 20, 2015 and, at that time, downplayed the severity and extent of the breach, posting on its website that "our team has now successfully removed the posts related to this incident as well as all Personally Identifiable Information (PII) about our users published online."

5.      On or about August 18, 2015, a trove of Personal Information of Plaintiff and Class Members was actually released to the public and was put on several websites (including Facebook, news sites, and local community sites) over the following days.  On or about August 20, 2015, an additional trove of Personal Information of Plaintiff and Class Members was similarly released to the public. On August 23, 2015, a third trove of Personal Information of Plaintiff and Class Members was released to the public.  Despite being told that it could prevent the release of Personal Information of Plaintiff and Class Members, Defendants allowed such Personal Information to be released to the public and did not notify Plaintiff and Class Members about the threat of the release of Personal Information or the actual release of Personal

2                                    ORIGINAL COMPLAINT

Information.   Upon information and belief, in an internal company file called "Areas of concern – customer data.docx," an unnamed employee at the company lists technical issues that could lead to a data breach occurring, as well the legal problems that may come with that.   Under a section called "Data leak/threft [sic] issues," the author lists customer data being exposed by phishing or SQL injection being a possible problem, when malicious requests are punched into an entry field, typically in order to dump the site database.   Another employee worried about remote code execution—when an attacker can run code on a victim's computer over the internet—and yet another employee pointed to employees being infected with malware, "allowing hackers access to our user data."   Additionally, on September 10, 2015, a "password-cracking group" called CynoSure Prime announces on its blog that it has successfully cracked 11.2 million Ashley Madison users' passwords and that an additional 4 million could be broken using its techniques. The group exploited the fact that Defendants' website stored some passwords using an insecure implementation of the MD5 cryptographic hash function, which included the storing of passwords within the hashes themselves. *See* http://www.databreachtoday.com/researchers-crack-11-million-ashley-madison-passwords-a-8528?utm_source=dlvr.it&utm_medium=twitter#

6.      Starting shortly after the three troves of data of Personal Information were released to the public, persons began contacting Plaintiff and Class Members (through the emails that were released in the troves) falsely claiming that they could remove Plaintiff and Class Members information from the publicly released data troves for a price. In others cases, Plaintiff and Class Members were the subject of blackmail and/or extortion attempts by persons that threatened (and continue to threaten) Plaintiff and Class members with public humiliation and shame for their use on the website unless they agree to send a payment in the form of Bitcoins to the blackmailers. These threats have included posting information to the Plaintiff's and Class Members' social media sites and contacting their friends, spouses, and employers, among other things, and many of these threats were actually carried out by the blackmailers.

7.      Defendants also perpetrated a massive fraud on the Plaintiff and Class Members through the misrepresentation and falsification of the number of female users on the Ashley

ORIGINAL COMPLAINT

Madison website that came to light as a result of the data breach.  Ashley Madison users were charged for a number of things on the website, including sending messages.  Hundreds of company emails from the second and third trove show that Defendants were paying people to create fake women profiles and to chat or message with men on the site.  Additionally, Defendants created "engagers" (computer programs or "bots" designed and developed by Defendants) to interact with Ashley Madison users.  These "engagers" were programmed to make a note of each interaction with a real user in a database under fields called "bc_chat_last_time," "reply_email_last_time," or "bc_email_last_time," among other fields.  Upon information and belief, the vast majority of these engagers were programmed interact with male users, and approximately 20 million men out of 31 million men received "bot" messages (or mail) and about 11 million of those chatted or messaged "bots" or "engagers." For instance, comments in the source code contained in troves included comments such as:

> host bot mother creates engagers

> birth has been given! let the engager find itself a man!

> randomizing start time so engagers don't all pop up at the same time

> for every single state that has guest males, we want to have a chat engager

The "engagers" or "bots" are computer programs or software that operates by inhabiting previously existing fake profiles that the Defendants call "angels."  Angels are profiles that former Ashley Madison Chief Executive Officer Noel Biderman ordered his employees to create in internal company emails.  The "angels" (or "hosts," as referred to by Defendants employees), remained dormant until an engagers inhabits or animates them and contact a user.  Plaintiff and Class Members were charged by Defendants for each message or email sent on the AshleyMadison.com website, whether Plaintiff and Class Members were interacting with "engagers" or real members.

8.      Plaintiff, on behalf of himself and all others similarly situated, asserts the following claims: Violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2702; negligence; breach of implied contract; breach of contract, bailment, conversion, intentional

infliction of emotional distress, negligent infliction of emotional distress, fraud by concealment, fraud, fraudulent misrepresentation, negligent misrepresentation, invasion of privacy, and substantially similar statutes of the other states in which Defendants conduct business, including violations of state consumer and trade practices laws, violation of state data breach laws, and violations of customer records laws.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States, and pursuant to 18 U.S.C. § 2707.  This Court has supplemental jurisdiction over Plaintiff's and Class Members' state law claims under 28 U.S.C. § 1367.

10.      In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of Plaintiff and all Members of the putative Classes are in excess of $5,000,000.00, exclusive of interest and costs, and many of the Class Members of the putative class are citizens of different states than Defendants. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

11.      Venue is properly set in this District pursuant to 28 U.S.C. § 1391(b) since Defendants transact business within this judicial district and have specifically targeted this jurisdiction in its marketing and membership development efforts by, for instance, placing billboard in the area and otherwise attempting to expand their membership base in this district. Likewise, a substantial part of the events giving rise to the claim occurred within this judicial district.

12.      This Court has personal jurisdiction over the Defendants, including Defendant Noel Biderman, because a substantial portion of events described herein arose out of the Defendants' contacts with California as described in this Paragraph and below.  Defendant Biderman's contacts with California include personally visiting the State of California (a) for purposes of marketing to Californians the services of Defendants ALM and ADL, such marketing and services giving rise to the claims in this case, and (b) to otherwise specifically target

California citizens in his business development activities for ALM and ADL, such activities giving rise to the claims in this case, including by personally selecting the location of and arranging for marketing billboards in Los Angeles near the Los Angeles International Airport, and (c) to direct the sale of products to customers in California via the AshleyMadison.com interactive website, such actions giving rise to the claims in this case. *See* http://www.huffingtonpost.com/2012/07/25/kim-jong-un-billboard-ashley-madison-lax-airport-_n_1703565.html. Biderman, personally and as Chief Executive Officer ("CEO") for the other Defendants, authorized, directed, and participated in all of these marketing and sales activities, and he was the primary participant in them. The Plaintiff and Class Members would not have been injured but for these activities purposely directed to California citizens by the Defendants.

## PARTIES

13.     Plaintiff Gustavo Alfaro is an adult male domiciled in Riverside, California, and is a citizen of California.   Plaintiff and Class Members provided Personal Information to Defendants with a heightened expectation of privacy due to the nature of Defendants' products and services.   Additionally, Plaintiff and Class Members provided Personal Information to Defendants in order to effectuate a "paid-delete" of any of their personal information in Defendants' possession, including Personal Information, as promised by Defendants. Plaintiff and Class Members paid $19 to Defendants to have the account permanently deleted (the "paid-delete").   Plaintiff's and Class Members' Personal Information was compromised as a result of Defendants' security failures. As a result of such compromise, Plaintiff suffered losses and damages in an amount yet to be completely determinable as such losses and damages are ongoing.  Additionally, Plaintiff and Class Members paid to become members and paid for credits on the AshleyMadison.com website and were charged for their interaction with "engagers" or "bots" despite Defendants being aware that such interactions were fake and designed merely to generate revenue for Defendants.

14.     Defendant Avid Life Media, Inc. ("Avid Life Media") is a corporation organized

and existing under the laws of the Canadian Province of Ontario, with its principal place of business and headquarters in Toronto, Ontario. The corporation owns various companies that are in the business of operating online dating websites.

15.    Defendant Avid Dating Life, Inc. d/b/a Ashley Madison is a corporation organized and existing under the laws of the Canadian Province of Ontario, with its principal place of business and headquarters in Toronto, Ontario, and is regularly engaged in the business of operating online dating websites, including AshleyMadison.com.

16.    Defendant Noel Biderman is an individual and former CEO of Defendant ALM, and upon information and belief, the former CEO of Defendant ADL.   Upon information and belief, Defendant Biderman is domiciled in the City of Toronto in the Canadian Province of Ontario and is a resident of the City of Toronto in the Canadian Province of Ontario and has an address of 277 Hillhurst Blvd. Avenue, Toronto, Ontario M5N 1P3.



## FACTUAL BACKGROUND

17.    Plaintiff repeats, realleges, and incorporates paragraphs 1-15 of this Complaint as if fully set forth herein.

18.    AshleyMadison.com is owned by Avid Life Media and/or Avid Dating Life, Inc., which were founded by their former CEO Noel Biderman, which also owns various companies

ORIGINAL COMPLAINT

that are in the business of operating online dating websites, including CougarLife.com and EstablishedMen.com.

19.     AshleyMadison.com is a dating website marketed to people who are married or are in committed relationships seeking to engage in adulterous behavior.  Defendants market AshleyMadison.com to consumers in the United States as well as to consumers in about 45 other countries. Defendants market Ashley Madison as a "discreet" website with over 38 million "anonymous members." It is rated the twentieth most popular adult website in the United States. Defendants market the website through television, radio, billboard, and Internet advertisements, many of which feature Defendant Biderman as the website's spokesperson.  Defendant Biderman personally visited the State of California for marketing purposes and to specifically target California citizens for business.  Defendant Biderman was personally involved in California with setting up billboards in Los Angeles near the Los Angeles International Airport (including at least the one picture below and featuring Kim Jong Un) and by directing the sale of products to customers in the California via the AshleyMadison.com interactive website.

*See* http://www.huffingtonpost.com/2012/07/25/kim-jong-un-billboard-ashley-madison-lax-airport-_n_1703565.html.



Defendants Biderman "said he chose the high-traffic location because he's looking to expand Ashley Madison in Los Angeles. The city is not even in the top-10 U.S. cities on a membership-

ORIGINAL COMPLAINT

per-capita basis, he said. Biderman speculated that this could be because Angelenos have an easy time finding affair partners without using the Internet or because 'maybe East Coast weather keeps people indoors and makes them behave differently.'" *Id.*  Defendant Biderman was the guiding spirit and central figure in the unlawful activity alleged herein and personally benefitted from his participation in the activities in, and directed to, California due to his position of founder of AshleyMadison.com, CEO of ALM and/or ADL, and approximately 10% shareholder of Defendant ALM.  The Plaintiff and Class Members would not have been injured as alleged in this Complaint but for Defendant Biderman's actual participation in the conduct alleged herein through the directing of marketing and sales activity to California citizens by Defendant Biderman.

20.     Defendants provide the interactive website AshleyMadison.com.  The content that is provided on AshleyMadison.com and which is the subject of this lawsuit is created by solely by Defendants and/or the "bots" or "engagers" developed by Defendants, including the marketing, provision of default credit-usage settings for messages, presentation of "bots" or "engagers" through "angel" accounts as real members, offer of the "paid-delete" service that did not actual delete Personal Information as represented.  Indeed, Defendants themselves are even the content providers of Personal Information that was leaked.  The AshleyMadison.com website does not simply post whatever information that its users desire to post.  Instead, a profile for each user is created from the questions asked by Defendants' AshleyMadison.com website and the answers provided by the users.  These questions begin in the enrollment page:

ORIGINAL COMPLAINT





21.    Visitors are then asked to upload a "discreet" photograph.  Visitors are restricted from viewing other members' profile photographs without first uploading one of their own. These questions consist of multiple choice questions and essay questions. In the "Manage Profile" section, members may enter information relating to "My Intimate Desires," "My Perfect Match," and "My Personal Interests," among other information.

10

22.     By conducting its service, Defendants' AshleyMadison.com website does not just provide a site for people to post whatever information they choose. Rather, it provides a series of specific multiple-choice questions, selection submenus (the indicate preferences from a discrete list of possibilities), short answer questions, and a series of essay questions tailored to the AshleyMadison.com community. Thus, Defendants' take an active role in, and are responsible for, the development of the leaked Personal Information on the AshleyMadison.com.   Moreover, the hackers did not provide any content that is the subject of this lawsuit, rather, they exposed the security failures of Defendants which they knew about or should have known about. Thus, the hackers were not content providers of the Personal Information.

23.     The website AshleyMadison.com's business model is based on credits, which users purchase, as opposed to paid subscriptions. In order to initiate a conversation with another user, one must "pay" five credits. Users buy credits from the website and enter their credit or debit card information in order to pay for the credits.

24.     While creating an account on Ashley Madison is free and gives members "guest" status permitting access to limited features of the site, in order to read messages, members are required to purchase the "credits." As noted above, the approximate cost in credits to read and respond to a message is five credits, which in dollars equates to between about $1.45 and $2.95, not including the cost of the initiation charge of $19.99.

25.     In addition, Ashley Madison provided paying members the option of sending message "Priority Mail." The Priority Mail function costs full members – those members who pay to use the site, an additional five credits for sending priority mail.  However, rather than offer the Priority Mail option as an opt-in option, Ashley Madison set the default as an opt-out option, and automatically charged full members an additional 5 credits for each message, unless the member affirmatively opted-out. Moreover, the opt-out box was hidden behind two inconspicuous tabs, the first tab named "Managed Profile", and the second tab named "Profile Options." The opt-out box is named "Check this box if you wish to enable priority mail automatically."  The fact that full members are charged extra for priority mail and the fact that the website defaults to the

priority mail option is not disclosed. That full member messages were charged 5 extra credits as a default is and remains an omission of a material fact, that Ashley Madison knew, remained silent about, knew if it remained silent about it would mislead members, and in fact kept silent about it to mislead members, and was in good faith duty bound to disclose to members, and is the equivalent to a false representation. In addition, the priority mail option remains hidden behind two layers of inconspicuous tabs that were located behind the "Manage Options" tab, and behind the further "Profile Options" tab.

26.     This fee of five credits applies equally to message read and sent from and to "bot" engagers through "angel" profiles and real members on the site. In order to purchase credits, members must enter their credit or debit card information. On the webpage where members enter their payment information, AshleyMadison.com displays an icon of a lock, with the words "Secure & Trusted."

27.     The website also offers to delete user profiles, along with all Personal Information related to that user, from the website for a $19 charge, which is referred to as "paid-delete."

ORIGINAL COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12



13

14   28.      Plaintiff and Class Members contacted Defendants to accept Defendants' offer to

15   "paid-delete" any personal information, including Personal Information, in Defendants'

16   possession; in other words, Defendants promised to delete such information for a fee for the $19.

17   29.      Defendants failed to delete members' profile information as they promised to do

18   in exchange for the $19 fee, resulting in Plaintiff's and Class Members' Personal Information

19   being released to the public despite paying for paid-delete service.

20   30.      Due to the sensitive nature of the information provided to Defendants by its

21   members through AshleyMadison.com, Defendants heavily marketed its website as "discrete,"

22   being "100% SECURE" and an "SSL Secure Site." Defendants fraudulently trumpeted that

23   Ashley Madison had received the "Trusted Security Award," when, upon information and belief,

24   no such award exists. The website also displayed graphics of locks in various places on the

25   website to instill the sense of security in its members, including on the homepage, on the payment

26   page, and on the webpage that allowed members to edit or censure their photographs to blur parts

27   of the picture or superimpose masks on the faces in the photographs.

28   31.      Hackers accessed a database owned, operated, or controlled by Defendants that

13

ORIGINAL COMPLAINT

processes, stores, or utilizes information regarding Personal Information, including Defendants transactions, with account numbers, expiration dates, card holder names, credit card transactions, users' sexual preferences and fantasies, email addresses, and/or other information, on information and belief.  Hackers publicly exposed such personal information on several dates in August as noted herein.

32.     Upon information and belief, Defendants' data breach has impacted millions of its customers nationwide within the United States.

33.     Upon information and belief, the Defendants accept customer payments for services through credit and debit cards issued by members of the payment card industry ("PCI") such as Visa or MasterCard.

34.     In 2006, the PCI members established a Security Standards Counsel ("PCI SSC") as a forum to develop PCI Data Security Standards ("PCI DSS") for increased security of payment processing systems.

35.     The PCI DSS provides, "If you are a merchant that accepts payment cards, you are required to be compliant with the PCI Data Security Standard." Defendants, of course, are merchants that accept payment cards.

36.     The PCI DSS requires a merchant to:

a.     **Assess**—identify cardholder data, take inventory of IT assets and business processes for payment card processing, and analyze them for vulnerabilities that could expose cardholder data.

b.     **Remediate**—fix vulnerabilities and do not store cardholder data unless needed.

c.     **Report**—compile and submit required remediation validation records (if applicable) and submit compliance reports to the acquiring bank and card brands with which a merchant does business.

37.     Additionally, since 1995, the FTC has been studying the manner in which online entities collect and use personal information and safeguards to assure that online data collection

practice is fair and provides adequate information privacy protection. The result of this study is the FTC Fair Information Practice Principles.  The core principles are:

        a.      **Notice/Awareness--**Consumers should be given notice of an entity's information practices before any personal information is collected from them. This requires that companies explicitly notify of some or all of the following:

- Identification of the entity collecting the data;

- Identification of the uses to which the data will be put;

- Identification of any potential recipients of the data;

- The nature of the data collected and the means by which it is collected;

- Whether the provision of the requested data is voluntary or required; and

- The steps taken by the data collector to ensure the confidentiality, integrity and quality of the data.

        b.      **Choice/Consent--**Choice and consent in an online information-gathering sense means giving consumers options to control how their data is used with respect to secondary uses of information beyond the immediate needs of the information collector to complete the consumer's transaction.

        c.      **Access/Participation--**Access as defined in the Fair Information Practice Principles includes not only a consumer's ability to view the data collected, but also to verify and contest its accuracy. This access must be inexpensive and timely in order to be useful to the consumer.

        d.      **Integrity/Security--**Information collectors should ensure that the data they collect is accurate and secure. They should improve the integrity of data by cross-referencing it with only reputable databases and by providing access for the consumer to verify it. Information collectors should keep their data secure by protecting against both internal and external security threats. They should limit access within their company to only necessary employees to protect against internal threats, and they should use encryption and other computer-based security systems to stop outside threats.

15

e.      **Enforcement/Redress--**In order to ensure that companies follow the Fair Information Practice Principles, there must be enforcement measures. The FTC identifies three types of enforcement measures: self-regulation by the information collectors or an appointed regulatory body; private remedies that give civil causes of action for individuals whose information has been misused to sue violators; and government enforcement, which can include civil and criminal penalties levied by the government.

38.      On information and belief, Defendants failed to adequately analyze their computer systems for vulnerabilities that could expose cardholder data.  Defendants further failed to fix the vulnerabilities in its computer systems which allowed Plaintiff's and Class Members' Personal Information to become compromised.

39.      Additionally, on information and belief, Defendants unlawfully collected consumer financial data for marketing purposes beyond the needs of specific transactions, in order to accrue financial benefit at the risk and likelihood of compromising consumers' Personal Information.

40.      On or about July 15, 2015, and at times prior, Defendants' databases were compromised, with the result that Personal Information of Plaintiff and Class Members' Personal Information was used or is at risk of use in fraudulent transactions around the world, as well as other invidious exposure.   Upon information and belief, Defendants maintain or maintained information, including Personal Information, regarding nearly 37 million subscribers, and Defendants' security failures affected the credit and debit card of millions of customers, including Plaintiff and Class Members.  One of the primary purposes of Defendants product and services was confidentiality and anonymity.

41.      Upon information and belief, the security breach and theft of Personal Information was caused by Defendants' violations of its obligations to abide by the best practices and industry standards concerning the security of its payment processing systems and the computers associated therewith as set forth, for example, in Payment Card Industry Security Standards Council Data Security Standards ("PCI DSS") and the decisions of the Federal Trade

ORIGINAL COMPLAINT

Commission ("FTC") concerning protection of consumer financial information. Upon information and belief, hackers deliberately targeted Defendants' servers and collected names, usernames, passwords, email addresses, phone numbers, mailing addresses, and credit card numbers and expiration dates, credit card transactions, and other information. Upon information and belief, Defendants were also warned that the Personal Information would be released:



Avid Life Media has failed to take down Ashley Madison and Established Men. We have explained the fraud, deceit, and stupidity of ALM and their members. Now everyone gets to see their data.

Find someone you know in here? Keep in mind the site is a scam with thousands of fake female profiles. See ashley madison fake profile lawsuit; 90-95% of actual users are male. Chances are your man signed up on the world's biggest affair site, but never had one. He just tried to. If that distinction matters.

Find yourself in here? It was ALM that failed you and lied to you. Prosecute them and claim damages. Then move on with your life. Learn your lesson and make amends. Embarrassing now, but you'll get over it.

Any data not signed with key 6E50 3F39 BA6A EAAD D81D  ECFF 2437 3CD5 74AB AA38 is fake.

  42. After learning of the security breach, Defendants failed to notify Plaintiff and the Class Members in a timely manner and failed to take other reasonable steps to inform them of the nature and extent of the breach. As a result, Defendants prevented Plaintiff and the putative Class Members from protecting themselves from the breach and caused Plaintiff and Class Members to suffer financial loss and emotional distress.

  43. On or about August 18 of this year, the Personal Information of Plaintiff and Class Members was actually released to the public and was put on several websites. On or about August 20 of this year, additional Personal Information of Plaintiff and Class Members was similarly released. Despite being told that it could prevent the release of Personal Information of Plaintiff and Class Members, Defendants allowed such Personal Information to be released to the public and did not notify Plaintiff and Class Members about the threat of the release of Personal Information or the actual release of Personal Information. Upon information and belief, in an internal company file called "Areas of concern – customer data.docx," an unnamed employee at

ORIGINAL COMPLAINT

the company lists technical issues that could lead to a data breach occurring, as well the legal problems that may come with that.  Under a section called "Data leak/threft issues [sic]," the author lists customer data being exposed by phishing or SQL injection being a possible problem, when malicious requests are punched into an entry field, typically in order to dump the site database.  Another employee worried about remote code execution—when an attacker can run code on a victim's computer over the internet—and yet another employee pointed to employees being infected with malware, "allowing hackers access to our user data."

44.     As a result, Defendants allowed Personal Information connected with millions of consumers' credit cards and debit cards, including credit cards and debit cards of Plaintiff and Class Members and Personal Information related to the same, to become compromised for a period prior to July 15, 2015.

45.     Additionally, Defendants were provided with Personal Information to in order to effectuate a "paid-delete" of any of their personal information in Defendants' possession, including Personal Information, as promised by Defendant.  In fact, the amount of Personal Information was increased because Defendants even retained Personal Information related to the "paid-delete" transaction itself.  Plaintiff and Class Members Personal Information was compromised as a result of Defendants' security failures.

46.     As a direct result of this compromise and public release of Personal Information, Plaintiff and Class Members were and are being blackmailed and extorted by predators seeking to gain financially, as described above, through threats (and threats made good) to release Plaintiff's and Class Members Personal Information to their social media sites, friends, family, and employers if the Plaintiff and Class Members do not pay the predators a sum certain (in BitCoin or other tender).

47.     Additionally, AshleyMadison.com's website's code shows that Defendants created fake accounts, commonly referred to as "bot" accounts, or internally by Defendants as "engagers," to initiate conversations with members, mostly male members, in order to lure them into spending money purchasing credits.

ORIGINAL COMPLAINT

48.     In 2013, a disgruntled employee and a former spokesman for the website, Louise Van der Velde, threatened to go to the media with the information that there are little to no women on the site and that the site "simply rips people off."

49.     The same year, another employee, Doriana Silva, sued the website for injury she suffered to his wrists sustained from churning out fake profiles for the site.

50.     Members themselves report that sometimes within minutes of them creating accounts they received messages in form of emails or chats from other "female" members expressing interest in them. They are and were led to believe that they are personally contacted by real women who are interested in them.

51.     These communications, however, are not from actual members of Defendants' site, but rather are sent by "bot" accounts or "engagers," using "angel" profiles as described above.  That is to say, these are fake members set up by Defendants to communicate with real male members and make Defendants' website appear to have more female members than it actually does, and more enticing as a result. The communications sent by these "bots" or "engagers" are computer generated.

52.     The messages sent by Defendants' "bots" or "engagers" are not distinguishable from those generated by actual members in any particular way. The messages sent and received do not indicate that they are generated by "bots" or "engagers," and the profiles of these "bot" or "engagers" that use the "angel" profiles contain photographs and personal information mimicking real people.

53.     Most members are not able to respond to the messages, however, unless they first purchase credits with which to pay for each outgoing and sometimes incoming messages.

54.     Upon information and belief, almost half of the website's revenue came from "bot" or "engager" accounts engaging male members. On or about February 3, 2013, senior data analyst Haze Deng copied Biderman and COO Rizwan Jiwan on an email in which he presented analysis of how much money men were spending to communicate with "bot" accounts versus real female members. He wrote that men who paid for credits would, on average, send messages to

16-18 women, and that there is "[a]round [a] 35% chance, the contacted female is an engager."

55.     Defendants were aware of the effect that the "bots" or "engagers" had on Defendants' profitability.   In fact, Defendants' internal documents showed that Defendants tracked the use of "bots" or "engagers" and their use made a huge positive impact:



56.     Plaintiff and Class Members purchased credits from Defendants and were charged by Defendants for messages sent to "bots" or "engagers" through "angel" accounts just the same as if they were interacting with real members.

57.     Because Defendants provide a dating service to California consumers, they are required to include certain clauses pursuant to Cal. Civ. Code § 1694, et seq. in its contract with their members. Specifically, Cal. Civ. Code § 1694, et seq. requires that "[e]very dating service contract contain on its face, and in close proximity to the space reserved for the signature of the buyer, a conspicuous statement in a size equal to at least 10-point boldface type, as follows:

> You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are cancelling agreement, or words of similar effect. This notice shall be sent to: [Name of the business that sold you the contract, Address of the business that sold you the contract.]

58.     In addition, Defendants' contract also failed to include the name and address of the dating service operator to which the notice of cancellation was to be mailed on the first page

of Ashley Madison's contract in violation of Cal. Civ. Code § 1694.2(c).

59.     If a dating service contract is not in compliance with Cal. Civ. Code §§ 1694, et seq., the consumer may, at any time, cancel the contract. See Cal. Civ. Code § 1694.2(e).

60.     At the time Plaintiff and Class Members joined AshleyMadison.com, Defendants failed to provide Plaintiff and Class Members with notice of their right to cancel their contract with Defendants, as set forth herein, in violation of Cal. Civ. Code §§ 1694, et seq.

61.     As a result of Defendants' violations as alleged herein, Defendants' contract for dating services was "void and unenforceable." Cal. Civ. Code § 1694.4(a).

62.     Plaintiff and Class Members are subject to continuing damage from having their Personal Information comprised as a result of Defendants' inadequate systems and failures. Such damages include, among other things, the amount paid to Defendants to perform a "paid-delete" which Defendants did not perform or performed inadequately; the amount of money fraudulently extracted by Defendants through the use of "bots" or "engagers" via "angel" accounts; the amount of money fraudulently extracted by Defendants due to their hiding the fact that default settings caused extra credits to be spent per message; out-of-pocket expenses incurred to mitigate the increased risk of identity theft and or fraud; credit, debit, and financial monitoring to prevent and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of Defendants' security failures; the value of their time and resources spent mitigating the identity theft and/or fraud; the cost of and time spent replacing credit cards and debit cards and reconfiguring automatic payment programs with other merchants related to the compromised cards; and irrecoverable financial losses due to unauthorized charges on the credit/debit cards of Defendants' customers by identity thieves who wrongfully gained access to the Personal Information of Plaintiff and the Classes, the embarrassment of having Personal Information disclosed, the damage to marital relationships due to the breach, and the emotional distress of such breach.  Plaintiff is in immediate danger of sustaining these direct injuries as the result of Defendants' actions and inactions.

## **CLASS ACTION ALLEGATIONS**

63.     Plaintiff repeats, realleges, and incorporates paragraphs 1-57 in this Complaint as if fully set forth herein.

64.     Plaintiff brings this action on his own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following three (3) multi-state classes and three (3) state sub-classes:

Plaintiff seeks to represent all persons in the United States who were members of AshleyMadison.com and paid Defendants for "paid-delete" services of their Personal Information which were improperly performed or not performed at all (the "National Paid-Delete Class").

Plaintiff seeks to represent all persons in the United States who were and/or are members of AshleyMadison.com and whose Personal Information was subject to Defendants' security failures and who suffered damages and anticipate and/or are in immediate danger of suffering damages in the amount of fraudulent charges / unauthorized withdrawals made to their credit and/or debit cards, suffered damages and anticipate and/or are in immediate danger of suffering damages in the amount of overdraft charges made to their credit and/or debit cards, or that otherwise suffered damages and anticipate and/or are in immediate danger of suffering damages due to Defendants' security failures (the "National Class").

Plaintiff seeks to represent all persons in the United States who were and/or are paid members or otherwise paid to communicate with members at any time whose Personal Information was subject to Defendants' security failures and who have been defrauded by Defendants due to their use of "bots" or "engagers" (the "National Paid Class").

Plaintiff seeks to represent all persons in the United States that are citizens of California who were and/or are members of AshleyMadison.com and whose Personal Information was subject to Defendants' security failures and who suffered damages and anticipate and/or are in immediate danger of suffering damages in the amount of fraudulent charges / unauthorized withdrawals made to their credit and/or debit cards, suffered damages and anticipate and/or are in immediate danger of suffering damages in the amount of overdraft charges made to their credit and/or debit cards, or that otherwise suffered damages and anticipate and/or are in immediate danger of suffering damages due to Defendants' security failures (the "California Subclass")

Plaintiff seeks to represent all persons in the United States that are citizens of California who were and/or are paid members or otherwise paid to communicate with members at any time at any time whose Personal Information was subject to Defendants' security failures and who have been defrauded by Defendants due to their use of "bots" or "engagers" (the "California Paid Subclass")

Plaintiff seeks to represent all persons in the United States that are citizens of California who were members of AshleyMadison.com and paid Defendants for "paid-delete" services of their Personal Information which were improperly

performed or not performed at all (the "California Paid-Delete Class," and together with the National Class, the National Paid Class, the National Paid-Delete Class, the California Class, and the California Paid Class, the "Classes").

Excluded from the Classes are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors.

65.     The Members of the Classes are so numerous that joinder of all Members is impracticable. On information and belief, millions of credit and/or debit cards may have been compromised, and the Members of the Classes are geographically dispersed. Disposition of the claims of the proposed Classes in a class action will provide substantial benefits to both the parties and the Court.

66.     The rights of each member of the proposed Classes were violated in a similar fashion based upon Defendants' uniform wrongful actions and/or inaction.

67.     The following questions of law and fact are common to each proposed Class Member and predominate over questions that may affect individual Class Members:

a.     Whether Defendants failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' private financial and personal information and properly implemented its purported security measures to protect consumers' private financial and personal information from unauthorized capture, dissemination and misuse;

b.     Whether Defendants took reasonable measures to determine the extent of the security breach after it first learned of the same;

c.     Whether Defendants knew or should have known that their security measures were inadequate and vulnerable to cyber-attack;

d.     When Defendants became aware of an unauthorized disclosure of Plaintiff's and Class Members' personal and/or financial information;

e.     Whether Defendants' delay in informing consumers of the security breach was unreasonable;

f.     Whether Defendants' method of informing consumers of the security breach and its description of the breach and potential exposure to damages as a result of the same

was unreasonable;

        g.      Whether Defendants had adequate substantiation for the services' claims prior to making them;

        h.      Whether Defendants misrepresented the safety and security of Plaintiff's and Class Members' personal and/or financial information maintained by Defendants;

        i.      Whether Defendants knew or should have known that members were being contacted by fake "bot" and/or "engagers" through "angel" accounts and that messages sent by "bots" or "engagers" through "angel" accounts misled members about the fact that they were being sent computer generated message and not messages from real people;

        j.      Whether Defendants' misrepresentations regarding "bot" or "engagers" through "angel" accounts were intentional;

        k.      Whether Defendants fraudulently concealed information regarding the use of "bot" or "engagers" through "angel" accounts;

        l.      Whether Defendants knew or should have known that they failed to fully delete profile information of members who paid for the full delete option;

        m.      Whether Defendants concealed the tabs that set defaults that used extra credits to send messages between members;

        n.      Whether Defendants conduct was knowing, willful, intentional, and/or malicious

        o.      Whether Defendants' conduct violated the Stored Communications Act, 18 U.S.C. § 2702;

        p.      Whether Defendants conduct was negligent;

        q.      Whether Defendants breached an implied contract with Plaintiff and Class Members;

        r.      Whether Defendants breached a contract with Plaintiff and Class Members;

        s.      Whether Defendants' intentionally inflicted emotional distress upon

ORIGINAL COMPLAINT

Plaintiff and Class Members, and the substantively similar statutes of the other states where Defendants conduct business;

t.      Whether Defendants' negligently inflicted emotional distress upon Plaintiff and Class Members, and the substantively similar statutes of the other states where Defendants conduct business; and

u.      Whether Defendants conduct as alleged herein constitutes bailment and/or conversion;

v.      Whether Defendants conduct as alleged herein constitutes fraud by concealment, fraudulent misrepresentation, or negligent misrepresentation;

w.      Whether the receipt and transmittals of the private information of the Class Members by Defendants constitute an invasion of privacy;

x.      Whether the alleged conduct was deceptive, unfair, unlawful, and/or violates public policy or constitutes violations of the laws asserted herein, including California Business and Professions Code §17200, *et seq*. and §17500 *et seq.*; California Civil Code §3294, *et seq*.; California Civil Code §1694, *et seq*.; *et seq*.; California Customer Records Act § 1798.80, *et seq.*; and California Code §1790.80, *et seq*.; through the conduct identified herein;

y.      Whether the alleged conduct violated state data breach laws;

z.      Whether Plaintiff and others Members of the Classes are entitled to compensation, monetary damages, punitive damages, equitable relief and injunctive relief, and, if so, the nature and amount of such relief.

68.      Plaintiff's claims are typical of the claim of absent Class Members. If brought individually, the claim of each Class Member would necessarily require proof of the same material and substantive facts, and seek the same remedies.

69.      The Plaintiff is willing and prepared to serve the Court and the proposed Classes in a representative capacity. The Plaintiff will fairly and adequately protect the interest of the Classes and have no interests adverse to, or which directly and irrevocably conflicts with, the interests of other Members of the Classes. Further, Plaintiff has retained counsel experienced in

prosecuting complex class action litigation.

70.     Defendants have acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate equitable relief with respect to the Classes.

71.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual claims by the Class Members are impractical, as the costs of prosecution may exceed what any Class Member has at stake.

72.     Members of the Classes are readily ascertainable through Defendants' records of the transactions it undertook.

73.     Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incomparable standards of conduct for Defendant. Moreover, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members.

ORIGINAL COMPLAINT

## CAUSES OF ACTION
## COUNT I – VIOLATION OF THE FEDERAL STORED COMMUNICATIONS ACT, 18 U.S.C. § 2702

74.     Plaintiff repeats, realleges, and incorporates paragraphs 1-68 in this Complaint as if fully set forth herein.

75.     Plaintiff brings this claim on behalf of the Classes.

76.     The Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information. The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information."  S. Rep. No. 99-541, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555 at 3557.

77.     Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

78.     The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  *Id.* at § 2510(15).

79.     Through its payment processing equipment, Defendants provide an "electronic communication service to the public" within the meaning of the SCA because it provides consumers at large with credit and debit card payment processing capability that enables them to send or receive wire or electronic communications concerning their private financial information to transaction managers, card companies, or banks.

80.     By failing to take commercially reasonable steps to safeguard sensitive private financial information, even after Defendants were aware that customers' Personal Information had been compromised, Defendants have knowingly divulged customers' private financial information that was communicated to financial institutions solely for customers' payment verification purposes, while in electronic storage in Defendants' payment system.

81.     Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A).

82.     The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system."  18 U.S.C. § 2711(2).

83.     An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(4).

84.     Defendants provides remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photooptical or photoelectric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning customer private financial information.

85.     By failing to take commercially reasonable steps to safeguard sensitive private financial information, Defendants have knowingly divulged customers' private financial information that was carried and maintained on Defendants' remote computing service solely for the customer's payment verification purposes.

86.     As a result of Defendants' conduct described herein and its violations of Section 2702(a)(1) and (2)(A), Plaintiff and putative Class Members have suffered injuries, including lost money and the costs associated with the need for vigilant credit monitoring to protect against additional identity theft.  Plaintiff, on her own behalf and on behalf of the putative Classes, seek

an order awarding themselves and the Classes the maximum statutory damages available under 18 U.S.C. § 2707 in addition to the cost for 3 years of credit monitoring services.

87.     Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count I of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

### COUNT II – NEGLIGENCE

88.     Plaintiff repeats, realleges, and incorporates paragraphs 1-82 in this Complaint as if fully set forth herein.

89.     Plaintiff brings this claim on behalf of the Classes.

90.     Upon coming into possession of Plaintiff's and Class Members' Personal Information, i.e., private, non-public, sensitive financial information, Defendants had (and continues to have) a duty to exercise reasonable care in safeguarding and protecting the information from being compromised and/or stolen.

91.     Defendants also had a duty to timely disclose to Plaintiff and Class Members that a breach of security had occurred and their Personal Information pertaining to their credit cards and/or debit cards had been compromised, or was reasonably believed to be compromised.

92.     Defendants also had a duty to put into place internal policies and procedures designed to detect and prevent the theft or dissemination of Plaintiff's and Class Members' Personal Information.

93.     Defendants, by and through its above negligent acts and/or omissions, breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding their Personal Information which was in Defendants' possession, custody, and control.

94.     Defendants, by and through its above negligent acts and or omissions, further

29                                                      ORIGINAL COMPLAINT

breached its duty to Plaintiff and Class Members by failing to put into place internal policies and procedures designed to detect and prevent the unauthorized dissemination of Plaintiff and Class Members' Personal Information.

95.     Defendants, by and through its above negligent acts and or omissions, breached its duty to timely disclose the fact that Plaintiff and Class Members' Personal Information had been or was reasonable believed to be have been compromised.

96.     Defendants' negligent and wrongful breach of its duties owed to Plaintiff and Class Members, their Personal Information would not have been compromised.

97.     Plaintiff's and Class Members' Personal Information was compromised and/or stolen as a direct and proximate result of Defendants' breach of its duties as set forth herein.

98.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members suffered severe mental anguish, disability, loss of capacity for the enjoyment of life, and expense of medical care and treatment.

99.     Plaintiff and Class Members have suffered actual damages including, but not limited to, having their personal information compromised, incurring time and expenses in cancelling their debit and/credit cards, activating new cards and re-establishing automatic payment authorizations from their new cards, and other economic and non-economic damages, including irrecoverable losses due to unauthorized charges on their credit/debit cards, and costs associated with loss of productivity from taking time to ameliorate the actual and future consequences of the breach.

100.     Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count II of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT III -- BREACH OF IMPLIED CONTRACT

101.     Plaintiff repeats, realleges, and incorporates paragraphs 1-95 in this Complaint as if fully set forth herein.

102.     Plaintiff brings this claim on behalf of the Classes.

103.     Plaintiff and Class Members were required to provide Defendants with their Personal Information in order to facilitate their credit card and/or debit card transactions.

104.     Defendants solicited and invited Plaintiff and Class Members to sign up with AshleyMadison.com and to provide their personal and financial information. Plaintiff and Class Members accepted the website's offer and provided their personal information in order to create a member account and some later provided their financial information in order to purchase credits.

105.     Implicit in this requirement was a covenant requiring Defendants to take reasonable efforts to safeguard this information and promptly notify Plaintiff and Class Members in the event their information was compromised.

106.     Similarly, it was implicit that Defendants would not disclose Plaintiff's and Class Members' Personal Information.

107.     Notwithstanding its obligations, Defendants knowingly failed to safeguard and protect Plaintiff's and Class Members' Personal Information. To the contrary, Defendants allowed this information to be disseminated to unauthorized third parties.

108.     Defendants' above wrongful actions and/or inaction breached its implied contracts with Plaintiff and Class Members, which in turn directly and/or proximately caused Plaintiff and Class Members to suffer substantial injuries.

109.     Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count III of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this

ORIGINAL COMPLAINT

Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT

110.    Plaintiff repeats, realleges, and incorporates paragraphs 1-104 in this Complaint as if fully set forth herein.

111.    Plaintiff brings this claim on behalf of the Paid-Delete Class.

112.    Defendants promised the Plaintiff and Class Members, for a fee of approximately $19, to delete any of Plaintiff's/Class Member's personal information, including Personal Information, in Defendants' possession (the "paid-delete" service).

113.    Plaintiff and Class Members paid Defendants the required fee to have their information deleted from Defendants' website's database.

114.    Defendants broke such promise, and did not delete some or all of Plaintiff's/Class Member's Personal Information in Defendants' possession, even after the payment of such fee.

115.    As a result of Defendants' failure to delete this information and breach of the agreement, the information was accessed and stolen by hackers.

116.    Plaintiff and Class Members have been damage thereby in the amount paid to the Defendants to perform a "paid-delete," and in the amount of other losses as previously stated.

117.    Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count IV of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

118.    Plaintiff repeats, realleges, and incorporates paragraphs 1-112 in this Complaint as if fully set forth herein.

119.    Plaintiff brings this claim on behalf of the Classes.

ORIGINAL COMPLAINT

120.     Defendants acted intentionally or recklessly in failing to adequately secure Plaintiff and Class Members' Personal information despite knowing that there were security problems and failures and did nothing to remedy those problems and failures despite being aware of them.  Moreover, despite being warned that Personal Information was compromised through a breach, Defendants intentionally or recklessly failed to mitigate such breach causing millions of users Personal Information to be released to the public. Such conduct was extreme and outrageous, especially in light of the confidential nature of the products and services that Defendants provide.

121.     Defendants' actions caused Plaintiff and Class Members emotional distress directly related to their actions in the form of extreme and severe emotional distress over their marital relationship, societal status, reputation in the community, and other general distress resulting from Defendants' actions and inactions.

122.     As a direct and proximate result of Defendants' negligence, hackers accessed and collected Plaintiff's and Class Members' personal and financial information.

123.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members suffered severe mental anguish, disability, loss of capacity for the enjoyment of life, and expense of medical care and treatment.

124.     Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count V of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

### COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

125.     Plaintiff repeats, realleges, and incorporates paragraphs 1-119 in this Complaint as if fully set forth herein.

126.    Plaintiff brings this claim on behalf of the Classes.

127.    Defendants acted negligently in failing to adequately secure Plaintiff and Class Members' Personal information despite knowing that there were security problems and failures and did nothing to remedy those problems and failures despite being aware of them.  Moreover, despite being warned that Personal Information was compromised through a breach, Defendants negligently failed to mitigate such breach causing millions of users Personal Information to be released to the public. Such conduct was exceedingly negligent, especially in light of the confidential nature of the products and services that Defendants provide.

128.    Defendants had a duty to Plaintiff and Class Members to take reasonable care to protect and safeguard Plaintiff's and Class Members' personal and financial information.

129.    Defendants breached their duty when they failed to take reasonable precautions to safeguard and protect Plaintiff's and Class Members' personal and financial information from collection and misuse.

130.    As a direct and proximate result of Defendants' negligence, hackers accessed and collected Plaintiff's and Class Members' personal and financial information.

131.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members suffered severe mental anguish, disability, loss of capacity for the enjoyment of life, and expense of medical care and treatment.

132.    Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count VI of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

### COUNT VII – BAILMENT

133.    Plaintiff repeats, realleges, and incorporates paragraphs 1-127 in this Complaint as

34

if fully set forth herein.

134.    Plaintiff brings this claim on behalf of the Classes.

135.    Plaintiff and the Class Members delivered and entrusted their Private Information to Defendants for the sole purpose of receiving services from Defendants.

136.    During the time of bailment, Defendants owed Plaintiff and Class Members a duty to safeguard their information properly and maintain reasonable security procedures and practices to protect such information. Defendants breached this duty.

137.    As a result of this breach of duty, Plaintiff and Class Members have suffered harm.

138.    Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count VII of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT VIII – CONVERSION

139.    Plaintiff repeats, realleges, and incorporates paragraphs 1-133 in this Complaint as if fully set forth herein.

140.    Plaintiff brings this claim on behalf of the Classes.

141.    Plaintiff and Class Members were the owners and possessors of their private information. As the result of Defendants' wrongful conduct, Defendants have interfered with the Plaintiff and Class Members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

142.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class Members suffered injury, damage, loss of harm and therefore seek compensatory damages.

143.    Plaintiff and Class Members did not consent to Defendants' mishandling and loss of their private information.

144.    In converting Plaintiff's and Class Members' private information, Defendants have acted with malice, oppression and in conscious disregard of the Plaintiff's and Class Members' rights.

145.    Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count VIII of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT IX – FRAUD BY CONCEALMENT

146.    Plaintiff repeats, realleges, and incorporates paragraphs 1-140 in this Complaint as if fully set forth herein.

147.    Plaintiff brings this claim on behalf of the National Paid Class, National Paid-Delete Class, California Paid Class, and California Paid-Delete Class.

148.    Defendants intentionally concealed and suppressed material facts concerning the quality, nature, and character of the services offered at AshleMadison.com. As alleged in this Complaint, Defendants engaged in deception to defraud its members by using "bots" or "engagers" via "angel" accounts to cause Plaintiff and Class Members to spend money on credits that were used to communicate with computers instead of real members and engaged in deception by offering a "paid-delete" service that did not delete Personal Information.

149.    The "bots" or "engagers" were designed nefariously to create the false impression that real members were contacting the Plaintiff and Class Members and to induce them into paying to communicate with the "bots" or "engagers."  In fact, Ashley Madison created more than 70,000 female bots to send male users millions of fake messages, creating the illusion that many women were contacting the male member in hopes of an affair.  Additionally, the "paid-delete" service was designed nefariously to create the false impression that Plaintiff's and Class

Members' Personal Information would be deleted.

150.    Plaintiff   and   Class   Members   reasonably   relied   upon   Defendants misrepresentations that were made to Plaintiff and class members. They had no way of knowing that the "bots" or "engagers" were not actually real members or that the "paid-delete" would not actually delete Personal Information.   As alleged herein, Defendants employed extremely sophisticated methods of deception. Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

151.    Defendants also concealed and suppressed material facts concerning what is evidently the true nature of AshleyMadison.com— Defendants falsely represented that Ashley Madison had over 38 million anonymous members and that these members were "100% Like Minded People" and that they would delete Personal Information if the "paid-delete" service was purchased.   Defendants engaged in false representation by creating fake female "bot" accounts and sending out fake messages generated by the "bot" accounts or "engagers" via "angel" profiles to members of the website and by offering the "paid-delete" service that Defendants knew did not delete Personal Information.

152.    Defendants also falsely represented that the cost of sending and/or receiving message was five credits by failing to disclose to the members that priority mail option, which cost an additional five credits, was set as the default on members' accounts, and Defendants falsely offered the "paid-delete" service that Defendants knew did not actually delete all Personal Information as offered and advertised.

153.    Plaintiff and Class Members did not know and could not have known that Defendants   had   misrepresented   these   facts   and   reasonably   believed   Defendants' misrepresentations to be true.

154.    Defendants made these misrepresentations and concealed and suppressed them with the intent to deceive Plaintiff and Class Members and induce them to spend money purchasing credits to communicate with other members on the site, i.e. including reading and/or responding to fake messages generated by "bots" or "engagers" and paying for the "paid-delete"

service.

155.    Had Plaintiff and Class Members known the true facts, they would not have signed up for AshleyMadison.com and would not have purchased credits or additional credits to communicate on the website and would not have paid for the "paid-delete" service.

156.    As a proximate result of Defendants' misrepresentations, Plaintiff and Class Members, to their detriment, reasonably relied on Defendants' assurances and inducements and were and will continue to be damaged in the amount to be proven at trial.

157.    Defendants' false representations were material to consumers, both because they concerned the quality and nature of the services offered at AshleyMadison.com, including their assurances regarding confidentiality and security, and also because the representations played a significant role in the value of AshleyMadison.com to members and the reasoning behind Plaintiff and Class Members spending money in the form of credits and for the "paid-delete" option on the website.

158.    Defendants had a duty to disclose the "bot" or "engager" and "paid-delete" deceptions they engaged in with respect to AshleyMadison.com because knowledge of the deception and its details were known and/or accessible only to Defendants because they had exclusive knowledge as to implementation and maintenance of its deception, and because Defendants knew the facts were unknown to or not reasonably discoverable by Plaintiff or Class members.

159.    Having volunteered to provide information to Plaintiff and the Class, Defendants had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the desirability of AshleyMadison.com and the reasons for Plaintiff and Class Members for spending money on the website.

160.    On information and belief, Defendants have still not made full and adequate disclosures, and continues to defraud Plaintiff and Class Members by concealing material information regarding the nature of the "bots" or "engagers" and "angel" profiles and the "paid-delete" services.

161.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased credits, membership, or paid-delete services on AshleyMadison.com, Defendants were in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Class members.

162.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class Members' rights and the representations that Defendants made to them, in order to enrich Defendants.

163.    Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count IX of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT X – FRAUDULENT MISREPRENTATION

164.    Plaintiff repeats, realleges, and incorporates paragraphs 1-158 in this Complaint as if fully set forth herein.

165.    Plaintiff brings this claim on behalf of the National Paid Class, National Paid-Delete Class, California Paid Class, and California Paid-Delete Class.

166.    Common law Fraud is:

(1) A representation,

(2) Made to plaintiff by defendant,

(3) Without defendant knowing it to be true,

(4) Which proved false,

(5) Which plaintiff justifiably relied on,

 (6) To plaintiff's damage.

39

167.   Defendants falsely represented that Ashley Madison had over 38 million anonymous members and that these members were "100% Like Minded People." Defendants engaged in false representation by creating fake female "bot" accounts and sending out fake messages generated by the "bot" accounts or "engagers" via "angel" profiles to members of the website and they also falsely represented that the "paid-delete" service would delete all Personal Information of a user.

168.   Defendants also falsely represented that the cost of sending and/or receiving message was five credits by failing to disclose to the members that priority mail option, which cost an additional five credits, was set as the default on members' accounts, and Defendants falsely offered the "paid-delete" service that Defendants knew did not actually delete all Personal Information as offered and advertised..

169.   Class Members did not know and could not have known that Defendants had misrepresented these facts and reasonably believed Defendants' misrepresentations to be true.

170.   Defendants made these misrepresentations with the intent to deceive Class Members and induce them to spend money purchasing credits to communicate with other members on the site, i.e. including reading and/or responding to fake messages generated by "bots" or "engagers" and including paying for the "paid-delete" service.

171.   Had Class Members known the true facts, they would not have signed up for AshleyMadison.com and would not have purchased credits or additional credits to communicate on the website and would not have paid for the "paid-delete" service.

172.   As a proximate result of Defendants' misrepresentations, Class Members, to their detriment, reasonably relied on Defendants' assurances and inducements and were and will continue to be damaged in the amount to be proven at trial.

173.   Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count X of their Complaint; for actual and compensatory damages; for

40                                      ORIGINAL COMPLAINT

punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT XI – NEGLIGENT MISREPRESENTATION

174.   Plaintiff repeats, realleges, and incorporates paragraphs 1-169 in this Complaint as if fully set forth herein.

175.   Plaintiff brings this claim on behalf of the National Paid Class, National Paid-Delete Class, California Paid Class, and California Paid-Delete Class.

176.   Defendants falsely represented to Class Members that AshleyMadison.com offered interaction with real like-minded people, and that communications received by members were communications from real people as opposed to "bot" engagers.

177.   Defendants also falsely represented that the cost to read and/or send a message was five credits and failed to disclose to full members that the priority mail option, which cost an additional five credits, was set as the default option on members' accounts and also falsely represented that the "paid-delete" service would delete all Personal Information of a user.

178.   Class Members did not know and could not have known that Defendants had made these misrepresentations and reasonably believed Defendants' misrepresentations to be true.

179.   Class Members reasonably relied on Defendants' misrepresentations in signing up for AshleyMadison.com and in purchasing credits to communicate with other members, or those they believed to be other non-"bot" members, and also reasonably relied on Defendants' misrepresentations in signing of for the "paid-delete" service.

180.   Defendants knew or should have known the representation that the website provided interaction with real like-minded people was not what they represented it to be, particularly that millions of messages and chats sent were computer generated and sent from "bot" accounts and did not provide interaction with like-minded people and knew of should have known the representation that the "paid-delete" service did not actually delete all Personal Information.

ORIGINAL COMPLAINT

181.   Defendants had a duty to disclose the true facts regarding "bot" accounts and "paid-delete" services and/or a duty to not affirmatively misrepresent these facts.

182.   Defendants knew or should have known the representation that the cost of reading/receiving messages was five credits was not what they represented it to be, particularly that the site defaulted to charging full members not five but ten credits for sending messages, and the representation that the "paid-delete" service deleted all Personal Information of a user when it in fact did actually delete all Personal Information as offered and advertised..

183.   Defendants had a duty to disclose the true facts regarding the cost of messages and and/or a duty to not affirmatively misrepresent these facts and had a duty to disclose the true facts regarding the "paid-delete" services and/or a duty to not affirmatively misrepresent this fact.

184.   Had Class Members known that the true facts about "bot" accounts and the true facts about the cost of messages and the "paid-delete" service, Class Members would not have signed up for AshleyMadison.com and would not have paid money to purchase credits or additional credits to communicate with website's members or fake members or paid money to delete Personal Information.

185.   As a proximate result of Defendants' misrepresentations, Class Members, to their detriment, reasonably relied on Defendants' misrepresentations and were and will continue to be damaged in the amount to be proven at trial.

186.   Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count XI of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

### COUNT XII – FRAUD (Cal. Civ. Code § 3294)

187.   Plaintiff repeats, realleges, and incorporates paragraphs 1-181 in this Complaint as

if fully set forth herein.

188.    Plaintiff brings this claim on behalf of the California Paid Class, and the California Paid-Delete Class.

189.    Cal. Civil Code § 3294(a) provides:

In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that defendant has been guilty of oppression, fraud, or malice, the plaintiff, in additional to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

§ 3294(c)(3) defines "fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

190.    Defendants, through advertisements and public statements, falsely represented that AshleyMadison.com had over 38 million anonymous members, that members of the website were guaranteed to meet, or that the other members were, "100% Like-minded People," and that the website in general offered "an interactive way for like minded users to communicate, explore their fantasies, entertain themselves and to determine whether they wish to meet each other, chat with each other and/or explore extra-marital relationships…" and was a "social network for like-minded adults to interact."  Defendants through advertisements and public statements, falsely represented that the "paid-delete" service deleted all Personal Information of a user.

191.    Such representations were false because many of the members were "bots" or "engagers" using "angel" accounts created by Defendants and the "paid-delete" service did not actually delete all Personal Information, and Defendants knew that these representations were false and made such representations without regard to their truth.

192.    Additionally, Defendants, by and through statements on the Ashley Madison website, represented to Plaintiff and Class Members who are or were full members that the cost of reading and/or sending a message was five credits and that the "paid-delete" service actually deleted all Personal Information. Such representations amounts to false representations because

ORIGINAL COMPLAINT

the priority mail option was set at the default option on full members' accounts and the fact that the option was set as the default was not disclosed to full members, and with respect to the "paid-delete service, the "paid-delete" did not actually delete Personal Information. Such failure to disclose constitutes material omissions of fact which Defendants were duty bound to disclose to full members and "paid-delete" purchasers.

193.   When Defendants made such false representations they made them with the intent that Plaintiff and Class Members would rely on them and create Ashley Madison accounts and pay money to purchase credits in order to communicate with these "bot" accounts, while believing that they were paying money to communicate with other like-minded real women, and with the intent that Plaintiff and Class Members rely on the representations that messages cost only five credits to read and/or send and spent more credits than they realized they were spending, and with respect to "paid-delete," that they would rely on them and pay for the "paid-delete" believing that the users' Personal Information would be deleted.

194.   Had Class Members known the true facts, they would not have signed up for AshleyMadison.com and would not have purchased credits or additional credits to communicate on the website, and they would not have paid for the "paid-delete" service.

195.   As a proximate result of Defendants' misrepresentations, Class Members, to their detriment, reasonably relied on Defendants' assurances and inducements and were and will continue to be damaged in the amount to be proven at trial.

196.   Defendants actions were intentional, oppressive, and with fraud or malice in conscious disregard of Plaintiff's and Class Members' consumer protection rights.

197.   Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count XII of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this

Court deems just and proper.

## COUNT XIII – INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACTS, AND CALIFORNIA CONSTITUTION RIGHT TO PRIVACY

198.    Plaintiff repeats, realleges, and incorporates paragraphs 1-192 in this Complaint as if fully set forth herein.

199.    Plaintiff brings this claim on behalf of the California Class, the California Paid Class, and the California Paid-Delete Class.

200.    Plaintiff and Class Members had a reasonable expectation of privacy in the private information Defendants mishandled.

201.    By failing to keep Plaintiff's and Class Members' private information safe, and by misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendants invaded Plaintiff's and Class Members' privacy by:

a.    Allowing intrusion into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person;

b.    Allowing publication of private facts about Plaintiff and Class Members, which is highly offensive to a reasonable person; and

c.    Violating Plaintiff's and Class Members' right to privacy under California Constitution, Article 1, Section 1, through the improper use of Plaintiff's and Class Members' private information and property that was obtained for a specific purpose yet used for another purpose and disclosed to a third party.

202.    Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' positions would consider Defendants' actions highly offensive.

203.    Defendants permitted invasion into Plaintiff's and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private affairs by allowing the misuse and disclosure of Plaintiff's and Class Members' private information without their informed, voluntary, affirmative and clear consent.

45

204.    As a proximate result of such misuse and disclosures, Plaintiff's and Class Members' reasonable expectations of privacy of their private information were unduly frustrated and thwarted, and they suffered a serious invasion of their protected privacy interests.

205.    In failing to protect Plaintiff's and Class Members' private information, and in allowing misuse and disclosure of that information, Defendants have acted in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

206.    Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

207.    WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count XIII of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT XIV – VIOLATION OF CALIFORNIA'S CUSTOMER RECORDS ACT
### (Cal. Civ. Code §§ 1798.80, *et seq.*)

208.    Plaintiff repeats, realleges, and incorporates paragraphs 1-202 in this Complaint as if fully set forth herein.

209.    Plaintiff brings this claim on behalf of the California Paid Class and the California Paid-Delete Class.

210.    "[T]o ensure that personal information about California residents is protected," the California Legislature enacted Cal. Civil Code § 1798.80 et seq., which provides any that business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

211.    Defendants are or ran "business[es]" within the meaning of Civil Code § 1798.80(a).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

212.   Plaintiff and Class Members are "customer[s]" within the meaning of Civil Code § 1798.80(c) "who provide[d] personal information to [Defendants] for the purpose of purchasing or leasing a product or obtaining a service from the business." The information retained by Defendants constitutes "personal information" as defined in Civil Code § 1798.81.5(d)(1).

213.   The breach of the personal information of millions of members of AshleyMadison.com constitutes a "breach of the security of the system" of AshleyMadison.com pursuant to Civil Code § 1798.82(g).

214.   By keeping members' personal data within its custody and control longer than necessary, and by failing to properly and adequately dispose or make members' data encrypted and undecipherable, Defendants violated § 1798.81.

215.   By failing to implement reasonable security procedures and practices appropriate to the nature of Plaintiff's and Class Members' personal information, Defendants violated § 1798.81.5(b).

216.   Additionally, by failing to promptly notify all affected AshleyMadison.com members that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, Defendants violated § 1798.82 of the same title.

217.   As a direct and proximate result of Defendants' failure to implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class Members' personal and financial information, Plaintiff and Class Members suffered damages, including, but not limited to, loss of and invasion of privacy, loss of property, loss of money, loss of control of their personal and financial nonpublic information, fear and apprehension of fraud and loss of control over their personal and financial information, the burden of taking actions to protect themselves from fraud or potential fraud.

218.   Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against

ORIGINAL COMPLAINT

Defendants on this Count XIV of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

**COUNT XV – VIOLATION OF CALIFORNIA'S FALSE ADVERTISING ACT**
**(Cal. Bus. & Prof. Code § 17535 and equivalent laws in other states, including deceptive trade practices laws)**

219.    Plaintiff repeats, realleges, and incorporates paragraphs 1-213 in this Complaint as if fully set forth herein.

220.    Plaintiff brings this claim on behalf of the California Class, the California Paid Class and the California Paid-Delete Class.

221.    Defendants made the following statements, among others, in their advertisements:

a.    That Ashley Madison had "100% Like-minded People"

b.    "ASHLEY MADISON IS SIMPLY A SOCIAL NETWORK FOR LIKE MINDED ADULTS TO INTERACT."

c.    "Our Site and our Service gives users the opportunity to explore their fantasies and to interact with others on the Site." (emphasis added)

d.    "You acknowledge and agree that profiles of users and members, as well as, communications form such persons may not be true, accurate, or authentic . . ." (emphasis added)

e.     "AshleyMadison is 100% SECURE, completely anonymous and NOW GUARANTEED"

f.    That Ashley Madison received the "Security Trusted Award"

g.    That the "paid-delete" service would delete all Personal Information from the AshleyMadison.com website.



222.   By making such false, deceptive, and misleading representations quoted in paragraph 157(a)-(d) and (g), Defendants unlawfully and falsely, misleadingly and deceptively (a) represented that the members on its website were real people, and not "bots" or "engagers" and (b) represented that paying for the "paid-delete" service would cause all Personal Information of a user to be deleted.

223.   The falsities, deceptions, and misrepresentations quoted in paragraph 221(a)-(d) and (g) violated the FAL because they misled and deceived members about the fact that they were often or for the most part not communicating with real members, but instead with "bots" or "engagers" created by Defendants and responding to computer generated messages, not message from "like-minded" members interested in them, and also the "paid-delete" services did not remove all "traces" of a user or "personally identifiable information" or otherwise delete the Personal Information. These falsities and misrepresentations also mislead and deceived them about their chances of successfully finding a member with whom to engage in an affair and about their Personal Information being removed from AshleyMadison.com.

224.   By making such false, deceptive, and misleading representations quoted in

paragraph 221(e)-(f) Defendants unlawfully and falsely, misleadingly and deceptively represented that  shleyMadison.com was absolutely secure and had received an award for being secure, despite knowing that the website had security weaknesses.

225.    The falsities, deceptions, and misrepresentations quoted in paragraph 157(e)-(f) violated the FAL because they mislead Plaintiff and Class Members about the site's security.

226.    Defendants' advertisements of the website were untrue and misleading. Defendants knew or with exercise of reasonable care should have known that Defendants' advertisements of the website were untrue and misleading.

227.    Defendants' advertisements of the website were actually misleading and/or had a capacity, likelihood, and tendency to deceive or confuse Plaintiff and Class Members about the presence of "bots" or "engagers" through "angel" accounts or members on the site created by Defendants themselves and had the same tendency to deceive or confuse Plaintiff and Class Members about the deletion of their Personal Information when purchasing the "paid-delete" service.

228.    Defendants' advertisements of the website were actually misleading and/or had a capacity, likelihood, and tendency to deceive or confuse Plaintiff and Class Members about the site's security and the security of members' personal information.

229.    There is imminent threat of continuing harm because AshleyMadison.com marketing, offers of opening accounts, and sale of credits are ongoing and the "paid-delete" service is still being offered.

230.    Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count XV of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT XVI – VIOLATION OF CA. CIV. CODE § 1694, *et seq.*

231.    Plaintiff repeats, realleges, and incorporates paragraphs 1-225 in this Complaint as if fully set forth herein.

232.    Plaintiff brings this claim on behalf of the California Class, the California Paid Class, and the California Paid-Delete Class.

233.    Cal. Civ. Code § 1694 requires certain clauses, as set forth above, to be included in dating service contracts.

234.    Cal. Civ. Code § 1694 defines "a dating service contract" as:

[A]ny contract with any organization that offers dating, matrimonial, or social referral services by any of the following means:

      a.     An exchange of names, telephone numbers, addresses, and statistics.

      b.     A photograph or video selection process.

      c.     A personal introductions provided by the organization at its place of business.

      d.     A social environment provided by the organization intended primarily as an alternative to other singles' bars or club-type environments.

235.    At a date presently unknown to Plaintiff and Class Members, but at least as of August 21, 2011, and as set forth above, Defendants have engaged in the practice of forcing California consumers to enter into illegal contracts for dating services.

236.    The foregoing acts and omissions, specifically the failure to include in Defendants' dating service contract clauses required pursuant to Cal. Civ. Code § 1694.2, constitute violations of Cal. Civ. Code § 1694, et seq.

237.    Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count XVI of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for

ORIGINAL COMPLAINT

costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

### COUNT XVII – VIOLATIONS OF STATE CONSUMER LAWS
**(California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.* and equivalent laws of other U.S. states, including unfair competition laws)**

238.    Plaintiff repeats, realleges, and incorporates paragraphs 1-232 in this Complaint as if fully set forth herein.

239.    Plaintiff brings this claim on behalf of the Classes, including the California Class, the California Paid Class, and the California Paid-Delete Class.

240.    Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs.

241.    Defendants' conduct constitutes unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices, including, among other things, Defendants':

a.    failure to maintain adequate and reasonable data security practices to safeguard Plaintiff's and Class Members' personal and financial information;

b.    failure to disclose that its security practices were inadequate to safeguard Plaintiff's and Class Members' personal and financial information;

c.    failure to timely disclose the data breach and the extent of the breach to Plaintiff and Class Members;

d.    continued acceptance of Plaintiff's and Class Members' personal and financial information after Defendants knew or should have known of the vulnerabilities in its security;

e.    continued acceptance of Plaintiff's and Class Members' personal and financial information after Defendants knew or should have known of the data breach;

f.    making of an offer and promise to Plaintiff and Class Members to delete members' information from Defendants' computer systems in exchange for a fee, accepting the fee, but failing to delete members' information as promised;

g. falsely advertising and misrepresenting the experience offered by the website and the number of female member accounts and by creating fake "bots" or "engagers" that operate through "angel" accounts;

h. falsely advertising and misrepresenting that messages cost five credits to read and/or send;

i. violating above-referenced laws.

242. By engaging in these practices, Defendants have violated state consumer laws, including those that prohibit:

a. causing confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b. representing that goods or services have sponsorship, approval, characteristics, . . . uses, benefits, or quantities that they do not have;

c. representing that goods or services are of a particular standard, quality, . . . if they are of another;

d. engaging in unfair methods of competition;

e. engaging in unfair, deceptive, fraudulent and/or unlawful acts or practices.

243. As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent acts and practices described herein, Plaintiff and Class Members have suffered economic injuries.

244. Defendants have profited from their unlawful, unfair, and/or fraudulent acts and practices.

245. Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count XVII of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

**COUNT XVIII – VIOLATIONS OF STATE DATA BREACH STATUTES**

246.    Plaintiff repeats, realleges, and incorporates paragraphs 1-240 in this Complaint as if fully set forth herein.

247.    Plaintiff brings this claim on behalf of the Classes.

248.    Legislatures in the states and jurisdictions listed below have enacted data breach statutes. These statutes generally require that any person or business conducting business within the state that owns or licenses computerized data that includes personal information shall disclose any breach of the security of the system to any resident of the state whose personal information was acquired by an unauthorized person, and further require that the disclosure of the breach be made in the most expedient time possible and without unreasonable delay. Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

249.    Defendants' data breach constitutes a breach of the security system of the Defendants' systems within the meaning of the below state data breach statutes and the data breached is protected and covered by the below data breach statutes.

250.    Plaintiff's and Class Members' names, credit and debit card numbers, card expiration dates, CVVs addresses, phone numbers and email addresses constitute personal information under and subject to the below state data breach statutes.

251.    Defendants unreasonably delayed in informing the public, including Plaintiff and Class Members, about the breach of security of Plaintiff's and Class members' confidential and non-public personal information after Defendants knew or should have known that the data breach had occurred.

252.    Defendants failed to disclose to Plaintiff and Class Members without unreasonable delay and in the most expedient time possible, the breach of security of Plaintiff's and Class Members' personal and financial information when the Defendants knew or reasonably believed such information had been compromised.

253.     Plaintiff and Class Members suffered harm directly resulting from the Defendants' failure to provide, and the delay in providing, Plaintiff and Class members with timely and accurate notice as required by the below state data breach statutes. Plaintiff and Class Members suffered the damages alleged above as a direct result of Defendants' delay in providing timely and accurate notice of the data breach.

254.     Had Defendants provided timely and accurate notice of the data breach, Plaintiff and Class Members would have been able to avoid and/or attempt to ameliorate or mitigate the damages and harm resulting in the unreasonable delay by Defendants in providing notice. Plaintiff and Class Members could have avoided making credit or debit card purchases on AshleyMadison.com, could have avoided utilizing the services of AshleyMadison.com at all, and could have contacted their banks to cancel their cards, or could otherwise have tried to avoid the harm caused by the Defendants' delay in providing timely and accurate notice.

255.     The Defendants' failure to provide timely and accurate notice of the data breach violated the following state data breach statutes:

a.       Alaska Stat. Ann. § 45.48.010(a), et seq.;

b.       Ark. Code Ann. § 4-110-105(a), et seq.;

c.       Ariz. Rev. Stat. § 44-7501, et seq.;

d.       Cal. Civ. Code § 1798.83(a), et seq.;

e.       Colo. Rev. Stat. Ann § 6-1-716(2), et seq.;

f.       Conn. Gen. Stat. Ann. § 36a-701b(b), et seq.;

g.       Del. Code Ann. Tit. 6 § 12B-102(a), et seq.;

h.       D.C. Code § 28-3852(a), et seq.;

i.        Fla. Stat. Ann. § 501.171(4), et seq.;

j.       Ga. Code Ann. § 10-1-912(a), et seq.;

k.       Haw. Rev. Stat. § 487N-2(a), et seq.;

l.       Idaho Code Ann. § 28-51-105(1), et seq.;

m.       Ill. Comp. Stat. Ann. 530/10(a), et seq.;

n.  Iowa Code Ann. § 715C.2(1), et seq.;

o.  Kan. Stat. Ann. § 50-7a02(a), et seq.;

p.  Ky. Rev. Stat. Ann. § 365.732(2), et seq.;

q.  La. Rev. Stat. Ann. § 51:3074(A), et seq.;

r.  Md. Code Ann., Commercial Law § 14-3504(b), et seq.;

s.  Mass. Gen. Laws Ann. Ch. 93H § 3(a), et seq.;

t.  Mich. Comp. Laws Ann. § 445.72(1), et seq.;

u.  Minn. Stat. Ann. § 325E.61(1)(a), et seq.;

v.  Mont. Code Ann. § 30-14-1704(1), et seq.;

w.  Neb. Rev. Stat. Ann. § 87-803(1), et seq.;

x.  Nev. Rev. Stat. Ann. § 603A.220(1), et seq.;

y.  N.H. Rev. Stat. Ann. § 359-C:20(1)(a), et seq.;

z.  N.J. Stat. Ann. § 56:8-163(a), et seq.;

aa.  N.C. Gen. Stat. Ann. § 75-65(a), et seq.;

bb.  N.D. Cent. Code Ann. § 51-30-02, et seq.;

cc.  Okla. Stat. Ann. Tit. 24 § 163(A), et seq.;

dd.  Or. Rev. Stat. Ann. § 646A.604(1), et seq.;

ee.  Pa. 73 Stat. § 2301, et sq.;

ff.  R.I. Gen. Laws Ann. § 11-49.2-3(a), et seq.;

gg.  S.C. Code Ann. § 39-1-90(A), et seq.;

hh.  Tenn. Code Ann. § 47-18-2107(b), et seq.;

ii.  Tex. Bus. & Com. Code Ann. § 521.053(b), et seq.;

jj.  Utah Code Ann. § 13-44-202(1), et seq.;

kk.  Va. Code. Ann. § 18.2-186.6(B), et seq.;

ll.  Wash. Rev. Code Ann. § 19.255.010(1), et seq.;

mm.  Wis. Stat. Ann. § 134.98(2), et seq.; and

nn.  Wyo. Stat. Ann. § 40-12-502(a), et seq.

56

256.   Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendants on this Count XVIII of their Complaint; for actual and compensatory damages; for punitive or exemplary damages; for punitive or exemplary damages; for injunctive relief; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff and class members demand a jury trial as to all claims and issues triable of right by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Members of the proposed Classes pray that this Honorable Court do the following:

A.   Certify the matter as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and order that notice be provided to all Class Members;

B.   Designate Plaintiff as representative of the Classes and the undersigned counsel as Class Counsel;

C.   Award Plaintiff and the Classes compensatory and punitive damages in an amount to be determined by the trier of fact;

D.   Award Plaintiff and the Classes statutory interest and penalties;

E.   Award Plaintiff and the Classes appropriate injunctive and/or declaratory relief;

F.   Award Plaintiff and the Classes their costs, prejudgment interest, and attorney fees; and

G.   Grant such other relief as is just and proper.

DATED: November 6, 2015.

/s/ Steven W. Ritcheson
STEVEN W. RITCHESON
HENINGER GARRISON DAVIS, LLC
9800 D Topanga Canyon Boulevard, #347
Chatsworth, CA 91311
Tel: 818-882-1030
Fax: 818-337-0383


W. LEWIS GARRISON, JR.,
    *PHV forthcoming*
    lewis@hgdlawfirm.com
TAYLOR C. BARTLETT,
    *PHV forthcoming*
    taylor@hgdlawfirm.com
CHRISTOPHER B. HOOD
    PHV forthcoming
    chood@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203
Tel: 205-326-3336
Fax: 205-326-3332

JAMES F. MCDONOUGH, III.
    *PHV forthcoming*
    jmcdonough@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332


*Attorneys for Named Plaintiff*

ORIGINAL COMPLAINT